UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 12-23419-CIV-O'SULLIVAN
[CONSENT]

JOSE A. CONCEPCION-VEGA

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[1]

    Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on the plaintiff's Motion for Judgment by the Pleadings (D.E. #20, 4/1/13) and the defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (D.E. #25, 5/1/13). On January 25, 2013, the parties consented to magistrate judge jurisdiction for all further proceedings in this case. See Parties Consent to Magistrate Jurisdiction (D.E. # 16, 1/25/13). On April 1, 2013, this matter was reassigned to the undersigned for all further proceedings. See Clerk's Notice Reassigning (D.E. # 23, 4/1/13). The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the plaintiff, Jose A.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C.§ 405(g).

Concepcion-Vega.

## **I. FACTS**[2]

The plaintiff filed an application for supplemental security income benefits on September 6, 2007, which asserted a disability on-set date of January 2007. (Application Summary for Supplemental Security Income, Tr. 205-207). The Social Security Administration (hereinafter "SSA") denied the plaintiff's application, both initially and upon reconsideration. (Transcript of July 2, 2009 Hearing, Tr. 109-10). At an initial hearing on July 2, 2009, the plaintiff was represented by counsel and testified before an Administrative Law Judge (hereinafter "ALJ"). Id. at 73-109. The ALJ issued a decision on July 9, 2009 finding that the plaintiff was not disabled. (Notice of Decision July 9, 2009, Tr. 117-127).

The Appeals Council found error in the ALJ's determination that the plaintiff was literate in English and remanded with instructions to apply the appropriate standard of law. (Order of Appeals Council Tr. 131-133). A second hearing was held on May 10, 2010, in which the plaintiff was again represented by counsel and testified. (Transcript of May 10, 2010 Hearing, Tr. 44-72). On August 3, 2010, the ALJ issued a second decision finding that the plaintiff was not disabled. (Notice of Decision August 3, 2010, Tr. 21-43). The ALJ found that the plaintiff was not literate in English, but adopted all other findings of the previous decision. Id. The ALJ found that the plaintiff was capable of performing the sedentary, unskilled jobs of a production worker/finisher, hand

---

[2] All references to "Tr" refer to the transcript of the Social Security Administration record filed on December 21, 2012. See Defendant's Notice of Filing Transcript (D.E.# 12, 12/21/12). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

bander, and gauger. Id. at 38. On July 1, 2012, the Appeals Council denied the plaintiff's requested review of the ALJ's decision. (Order of Appeals Council, Tr. 1-8).

In early 2007 the plaintiff was diagnosed with HIV. (Transcript of July 9, 2009 Hearing, Tr. 76). Initially the plaintiff's HIV, was untreated and out of control. (Notice of Decision July 9, 2009 Tr. 121). As a result of his untreated HIV the plaintiff developed oral thrush, perianal fistual and herpetic lesions, recurrent skin abscesses, diarrhea, nausea, fatigue, cough and weight loss. Id. Beginning in May 2007, the plaintiff was prescribed Atripla, an HIV antiretroviral medication, which according to lab tests and medical expert opinion has been very effective in controlling the plaintiff's HIV. Id. The plaintiff in September 2007 began treatment with Guillermo Samodevilla, M.D., a family doctor. (Dr. Samodevilla Interrogatory Response, Tr. 401-417). During this period the plaintiff complained of a variety of symptoms including cough, congestion, knee pain, leg pain and recurrent oral thrush. (Dr. Samodevilla Interrogatory Response Tr. 402, 412, 463-467, 497). Due to the plaintiff's reported leg pain, Dr. Samodevilla prescribed the use of a three-legged cane. (Prescription by Dr. Samodevilla, Tr. 495).

In June 2008, Maria Alcaide, M.D., an infectious disease specialist at the Jackson Clinic, examined the plaintiff. (Interrogatory Response of Dr. Alcaide Tr 506-510). Laboratory tests revealed that the plaintiff was responding well to antiretroviral treatments, however, he claimed to still be suffering from right knee pain and fungal infections in both his hands and feet. (Jackson Health Discharge Notes Tr. 426). Dr. Alcaide prescribed anti-fungal and pain medications to treat the plaintiff's fungal infections and knee pain. Id. On April 2009, the plaintiff complained to Dr. Alcaide of feeling weak after taking his HIV medications in the morning. (Jackson Health

Discharge Notes, Tr. 477-479). The plaintiff decided to remain on his current medications because Dr. Alcaide advised him that any change in medication would result in an increase in the number of pills he would have to take. Id. at 478.

The plaintiff was treated at Bascom Palmer Eye Institute from July 2009 to March 2010 for a left eye injury that required surgical repair. (Tr. 452). The plaintiff's eye injury occurred when a piece of tile struck his left eye while cutting tiles at work. (Transcript of July 2, 2009 Hearing, Tr. 84). The treatment notes indicate that the plaintiff's right eye vision was 20/20 and his left eye vision ranged from 20/200 to 20/400, making the plaintiff effectively blind is his left eye. (Bascom Palmer Treatment Notes, Tr. 433-449, 512, 516).

During the first administrative hearing on July 2, 2009, the plaintiff testified that he grew up in Puerto Rico and had lived in Miami for the last seven years. (Transcript of July 2, 2009 Hearing Tr. 73-107). The plaintiff further stated that he had a driver's license, but could no longer drive due to his medications. Id. The plaintiff testified that he lived with his stepdaughter, her husband and her child. Id. When asked by the ALJ to describe his typical day the plaintiff testified that due to his medications, he spent most of his day sleeping. Id. The plaintiff stated that normally he could dress and bathe himself, but if his knee was swollen, he needed help from his stepdaughter's husband. Id. The plaintiff was able to move throughout the home, clean up after himself and was able to prepare simple meals for himself. Id. The plaintiff testified that the last time he was employed was in 2006 when he worked for a construction company. (Transcript of July 2, 2009 Hearing Tr. 82-83). The plaintiff testified that construction work is the only type of work he has ever performed. Id.

The medical expert (hereinafter "ME"),Dr. Pepi Granat, testified during the first hearing and asked the plaintiff a number of questions. (Transcript of July 2, 2009 Hearing, Tr. 86). The ME inquired about the effectiveness of the HIV medication on the plaintiff's various infections. Id. at 87-88. The plaintiff testified that the medications had helped eliminate most of his infections, but that he still struggled with fungal infections under his nails. Id.

The ALJ requested that the ME explain the plaintiff's impairments and whether any of those impairments were severe. (Transcript of July 2, 2009 Hearing Tr. 89-90). The ME explained that the plaintiff has HIV that is very well controlled with his current medication. Id. The ME testified that based on the medical record the plaintiff's impairments did not meet one of the listings. Id. at 91-92. The ME stated that based on his review of the medical record and the plaintiff's testimony and appearance that the plaintiff could not perform more then sedentary work. Id. at 92-95. The ME testified that the plaintiff's residual functional capacity (hereinafter "RFC") would allow him do almost anything sitting down and thus he could perform sedentary work involving sitting for six hours. Id. at 94-95. When asked about possible fatigue caused by the plaintiff's HIV medication, the ME stated that fatigue is common but difficult to quantify. Id. The ME further testified that fatigue caused by HIV medication is a "very subjective thing" and that fatigue may be more a result of depression. Id. at 98.

In addition to the plaintiff's and the ME's testimony, Gary Fanin, a vocational expert (hereinafter "VE"), testified at the first hearing. (Transcript of July 2, 2009 Hearing Tr. 98-104). The VE described the plaintiff's only past relevant work as a construction laborer, DOT #869.687-026, at a very heavy level, SVP 2. Id.

5

The ALJ asked the VE the following hypothetical question:

> ...could [you] assume a person the claimant's age, education, and work history. Further assume that the person has the residual functional capacity to perform a partial range of sedentary work. Specifically assume that the individual can frequently lift weights up to 10 pounds and occasionally lift items like ledgers, docket files, small tools, et cetera. The individual can sit for six hours in an eight-hour work day and stand and walk for up to two hours in an eight-hour work day. The individual can never climb ladders, ropes, scaffolds. Can never [be] within close proximity to moving mechanical parts. Can never work In high, exposed places and cannot work at any occupation In which bilocular vision is required. The individual should be assumed to have such poor vision in his left eye that he might not be able to identify a hazard. Again, something like moving mechanical parts or ledges, things like that.
>
> Is there any work available in significant numbers that such an individual could do?

Id. The VE testified that based upon the hypothetical question provided, he believed the plaintiff could not perform his past relevant work as a construction laborer. Id. at 100. The VE further testified that depending on whether the plaintiff was illiterate in English it would affect the number of sedentary positions available, because the positions may involve communicating with other people. Id. at 101.

The ALJ asked the VE to first assume that the plaintiff could not speak English. (Transcript of July 2, 2009 Hearing, Tr. 101). Based on this language barrier, the VE testified that the plaintiff would be able to perform the following jobs which are unskilled and at the sedentary level: an ampoule sealer, DOT #559.687-014., SVP 2 (25 jobs locally, 600 jobs statewide and 12,000 jobs nationally); and a hand packager, DOT #920.687-030, SVP 2 (10,000 jobs nationally, 200 jobs statewide and 25 jobs locally). Id. at 101-102. The VE then testified that without the language barrier the plaintiff would be able to perform additional sedentary level unskilled jobs: a surveillance system

monitor, DOT # 379.367-010, SVP 2 (500 jobs locally, 1,800 jobs statewide and 17,000 jobs nationally); and jobs such as food and beverage order clerk. Id. at 102-103. The ALJ's decision found that the plaintiff was literate in English and that the plaintiff was not disabled. (Notice of Decision July 9, 2009, Tr. 111-127).

The Appeals Council overturned the ALJ's first decision based on the literacy determination and remanded the case back to the ALJ. (Order of Appeals Council Tr. 129). A second hearing was held on May 10, 2010. (Transcript of May 10, 2010 Hearing. Tr. 46). The plaintiff's attorney submitted an additional medical source statement from Dr. Maria Alcaide at Jackson Memorial Hospital (hereinafter "Jackson") which commented on the plaintiff's testimony concerning allegations of fatigue caused by his medications. Id. at 49-50. Dr. Alcaide commented that the plaintiff's HIV medications have been known to occasionally cause fatigue, drowsiness and weakness. (Dr. Alcaide's Interrogatory Response Tr. 505-510). During the second hearing the ALJ reversed his previous finding concerning the plaintiff's English literacy and found that the plaintiff was unable to effectively communicate in English. (Transcript of May 10, 2010 Hearing, Tr. 55).

During the second hearing a VE, Pedro Roman, testified. (Transcript of 5/10/10 Hearing Tr. 46-71). The ALJ asked the VE the following hypothetical question:

> If you could assume a person of the claimant's age, education, and work history. Further assume that the individual is not able to communicate in English. This individual can frequently lift and carry up to 10 pounds and can occasionally lift and carry objections like small tools, docket files, and ledgers. The individual can push and pull an amount of weight similar to what he can lift and carry. The individual can sit for approximately six hours in an eight-hour work day and can stand and/or walk for approximately two hours in an eight-hour work day. The individual can never climb ladders, ropes, or scaffolds. Can never work in close proximity

7

> to moving mechanical parts and can never work in high exposed places. The individual is limited to occupations which do not require binocular vision. And this is because the individual is limited to the basic demands of unskilled work. And by that, I mean the individual can understand, remember, and carry out short and simple instructions; respond appropriately with co-workers; and respond appropriately to changes in routine work settings. I take it this individual could not perform the claimant's past work?

Id. at 57-58. The VE affirmed that the plaintiff could not return to his previous work. Id. The VE testified that the plaintiff could perform the following sedentary level jobs of finisher, DOT# 731.687-014, specific vocational preparation (hereinafter "SVP") of 2 (283 jobs locally, 815 jobs statewide and 27,802 nationally); hand bander, DOT# 920.687-030 (341 jobs locally, 1,101 jobs statewide and 21,352 nationally); and gauger, DOT# 712.687-018, SVP 2 (134 jobs locally, 430 jobs statewide and 12,951). Id.

During the hearing, the plaintiff's attorney, asked the VE how he factored the plaintiff's monocular vision impairment into his assessment. (Transcript of 5/10/10 HearingTr. 63-64). The VE testified that the plaintiff may have some problems with accommodation, but that individuals with monocular vision are still able to perform some jobs in a proper manner. Id. The plaintiff's attorney then asked the VE to add to the ALJ's hypothetical the plaintiff's use of a cane and whether this addition would erode the number of jobs available. Id. The VE answered that because this work is sedentary it is done primarily sitting and that the amount of standing and moving involved should not limit the plaintiff's ability to perform the jobs. Id. at 65-66.

The plaintiff's attorney next asked the VE to consider that due to fatigue the plaintiff would require an additional one-hour break during the work day and how that would affect the jobs previously identified. (Transcript of May 10, 2010 Hearing, Tr. 65).

The VE testified that this would completely eliminate those jobs because it is beyond what employers would allow. Id. The VE explained that Social Security (hereinafter "SS") regulations indicate that an individual must be able to work uninterruptedly for two hours, have a fifteen minute break, then work another two hours with thirty minutes for lunch with a fifteen minute break in the afternoon. Id. The VE stated that an additional one-hour break would be excessive and unacceptable to most employers. Id.

After the hearing and a review of the record, the ALJ issued a second decision finding that the plaintiff had the following severe impairments: HIV, loss of left eye vision, osteoarthritis in the knees, depression and hyperlipidemia. (Notice of Decision August 3, 2010, Tr. 30). The ALJ determined that the plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments. Id. at 30-31. The ALJ found that the plaintiff had the ability to perform a partial range of sedentary work. Id. The ALJ determined that the plaintiff could not return to his previous construction work, but considering the plaintiff's age, education, work experience and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the plaintiff could perform. Id. at 37-39.

## II. STANDARD OF REVIEW

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence'

is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the Court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See Bridges v. Bowen, 8 15 F.2d 622, 624 (11th Cir. 1987). The Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

The restrictive standard of review set out above applies only to findings of fact, no presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin, 894 F.2d at 1529. The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Comelius v. Sullivan, 936 F.2d 1143, 1 145-1 146 (11th Cir. 1991); see also Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

The social security regulations establish a five-step sequential analysis to arrive

at a final determination of disability. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)-(f). The ALJ must first determine whether the plaintiff is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the plaintiff suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the plaintiff's severe impairments to those in the listing of impairments. 20 C.F.R. § 404. 1520(d), subpart P, appendix 1. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the plaintiff's ability to perform other work. See Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the plaintiff from performing his or her past relevant work. If the plaintiff cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the plaintiff can perform. 20 C.F.R. § 404.1520(e)-(9).

The plaintiff bears the initial burden of proving that he is unable to perform previous work. See Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a

specific prior job. See Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

### III. LEGAL ANALYSIS

The plaintiff's first point of contention is that the ALJ erred by applying an incorrect pain standard in evaluating the plaintiff's alleged fatigue arising from the HIV medication by requiring the plaintiff to show the medication actually caused the fatigue. (Memorandum of Law in Support of Motion for Judgment by the Pleadings D.E. # 20-1 at 13-19). The plaintiff argues that the applicable standard for pain and other symptoms only requires that the evidence show an underlying abnormality that could reasonably be expected to result in the alleged symptom. Id. The plaintiff also argues that the ALJ erred by failing to explicitly address a conflict between the DOT description of jobs and the jobs identified by the VE. Id. at 19-23.  The defendant argues that there is substantial evidence to support the ALJ's credibility determination that the plaintiff's allegations of fatigue were not credible. (Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment D.E. # 25 at 13-16). The defendant further argues that jobs with an specific vocational profile ("SVP") level of two do not conflict with the plaintiff's RFC identified by the ALJ. Id. at 9-12.

When faced with subjective claims of pain, such as fatigue, the ALJ must apply a three-part standard which requires: 1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain and other symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ finds that

the standard has been met, the ALJ must find that the alleged pain is present, unless the ALJ determines that the claimant's testimony is not credible. Id. The ALJ's determinations of credibility are given due deference, but the ALJ must explicitly and adequately articulate the reasons for discrediting the claimant's testimony. Id. In Holt, the Eleventh Circuit reversed the ALJ's decision because the ALJ failed "to place on the record explicit and adequate reasons for rejecting" the claimant's testimony. Id.

Here the ALJ gave little weight to the plaintiff's subjective complaints of fatigue due to discrepancies between the plaintiff's testimony and the objective medical record. (Notice of Decision August 3, 2010, Tr. 33). The ALJ specifically pointed out that there was only one instance of documented feelings of fatigue present in the medical record. Id. In April 2009, the plaintiff complained of weakness and fatigue caused by his HIV medication, but when Dr. Alcaide offered to alter medication the plaintiff refused. Id. During Dr. Alcaide's physical examinations of the plaintiff, Dr. Alcaide never documented an instance of muscular weakness. Id. The ALJ further pointed out that during the July 2, 2009, hearing, Dr. Granat noted that the plaintiff "reported feeling fine to his treating physician." Id. Dr. Granat testified that fatigue or weakness are potential side-effects from HIV medications, but that these symptoms are difficult to quantify. Id. The ALJ specifically discounted the credibility of the plaintiff's subjective complaints due to discrepancies between the plaintiff's testimony and the reports of his treating physicians. Id. The Court finds that the ALJ explicitly and adequately articulated the reasons for rejecting the plaintiff's subjective testimony concerning fatigue and weakness.

The plaintiff further argues that the ALJ failed to address the conflict between the

13

DOT's descriptions of the jobs identified by the VE and the plaintiff's RFC. The plaintiff argues that these jobs are beyond the plaintiff's RFC because these jobs have an SVP[3] level of two which requires an individual that can understand and carry out detailed but uninvolved written or oral instructions. The ALJ found that the plaintiff could perform jobs requiring understanding, remembering and carrying out short simple instructions. The plaintiff argues that the DOT's descriptions of the jobs identified and the plaintiff's RFC as determined by the ALJ are inconsistent and thus the ALJ erred by failing to resolve the conflict before relying on the VE's testimony to support his decision. In support of his argument, the plaintiff cites to Leonard v. Astrue, 487 F. Supp 2d 1333 (M.D. Fla. 2007). In Leonard, the court addressed the issue of unresolved conflicts between a VE's testimony and the DOT descriptions. The court held that pursuant to SSR 00-4p when a conflict exists between a VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict and failure to do so can constitute reversible error. Id. at 1339.

In the present case, the Court discerns no apparent conflict between the VE's testimony and the DOT provisions at issue. In Anderson v. Astrue, No. 2:11-00046, 2011 WL 3843683 at *4-5 (S.D. Ala. Aug. 30, 2011), the Court found that the ALJ's limitations of simple routine tasks involving no more than simple, short instructions and simple work-related decisions was consistent with the requirements of unskilled work with an SVP level of two. The court in Anderson further noted that "several other courts

---

[3] "SVP" Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. Dep't of Labor, Dictionary Of Occupational Titles, Appendix C(II)

14

have concluded that jobs with a reasoning level of two are consistent with simple, unskilled work. Id. (citing to Meissel v. Barnhart, 403 F.Supp.2d 981, 984-85 (C.D. Cal. 2005); Hackett v. Barnhart, 395 F. 3d 1168, 1176 (10th Cir. 2005); Money v. Barnhart, 91 F.App'x. 210, 215 (3d Cir. 2004); Flaherty v. Halter, 182 F.Supp.2d 824, 850 (D. Minn. 2001)).

The ALJ's limitations placed on the plaintiff do not suggest any drastic impairment that would prevent the plaintiff from working in any of the unskilled jobs identified. The ALJ's limitations to jobs involving understanding, remembering and carry out short, simple instruction, do not conflict with the DOT's descriptions for the jobs identified by the VE. A level two SVP requires detailed but "uninvolved" instructions which specifically suggests a lower level of reasoning and which is essentially the same as the capacity to carry out "short simple instructions." See Anderson, WL 3843683 at *3-5. The jobs identified by the VE are all simple unskilled jobs and the ALJ specifically found that the plaintiff could carry out simple instructions which is entirely consistent with the requirements of simple unskilled labor. (Notice of Decision August 3, 2010, Tr. 38). The ALJ's finding that the plaintiff could perform a substantial number jobs available in the local economy is supported by substantial evidence.

Furthermore, the Eleventh Circuit has held that if there is a conflict between the DOT and the jobs identified by the VE, the testimony of the VE trumps the DOT because the DOT is not the exclusive source of admissible job information. Jones v. Comm'r. of Soc. Sec., 423 F.App'x 936, 939 (11th Cir. 2011) (stating that Social Security rulings are not binding on this Court and that to the extent that SSR-04 conflicts with Jones v. Apfel, 190 F.3d 1224, 1229-1230 (11th Cir. 1999) the Court is

15

bound by Jones). In the instant case, the Court finds that there is no conflict between the VE's testimony and the DOT provisions. Even assuming the existence of a conflict, the testimony of the VE trumps the DOT. Accordingly, the ALJ did not err when he denied the plaintiff's application for disability benefits.

### IV. CONCLUSION

Based on the foregoing, the Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Accordingly, it is ORDERED AND ADJUDGED as follows:

(1) The Motion for Judgment by the Pleadings (D.E. # 20, 4/1/13) filed by the plaintiff is **DENIED**.

(2) The Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment filed by the Defendant (D.E. # 24) is **GRANTED**.

(3) The decision of the Commissioner is **AFFIRMED.**

DONE AND ORDERED in Chambers this **5th** day of September, 2013.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record